[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff wife, whose birth name was Mary Kay DeLong, and the defendant husband were married on June 20, 1964, at Sapulpa, Oklahoma.
During the course of the marriage, four children, all issue, were born to the wife. All of the children have reached their majority.
The wife resided continuously in the State of CT Page 5870 Connecticut for at least one year prior to the commencement of this proceeding.
The wife is fifty-one (51) years of age who appears to be in good health but has testified to a history of health related problems. She claims to have emotional problems which started in 1974 and which result in anxiety attacks and severe depression. She last saw a mental health therapist about three years ago. She also has a chronic back problem, an irregular heart beat, and has had a bladder infection.
In 1961, she received an Associate's Degree in Secretarial Administration. During the major part of the marriage, the husband was the wage earner and the wife was the homemaker and primary caretaker of the children.
In 1989, the wife started to work on a part time basis for a chiropractor. This employment increased to 30 hours a week at the hourly rate of $11.00. In 1990, she testified, but did not elaborate, that she left the employment voluntarily because of personal reasons. She further testified that since then she has not looked for employment because the divorce was "too painful." She indicated that she intends to seek employment after the divorce but only on a part-time basis.
The court is not convinced that her present physical condition in any way prevents her from obtaining full-time employment. There was no medical testimony presented to the court which would indicate that she is not physically fit for full-time employment. Certainly, her condition has not prevented her from traveling to all parts of this country since the separation. By her own testimony, she and a Mr. Zapp took many trips in 1991. She has traveled to Boston, Hot Springs, Arkansas and Oklahoma, to mention just a few of the places. Certainly, during this period of time there was no medical crisis which would have prevented her from seeking employment. The court is not convinced that the divorce was "so painful" to her that she could not have worked. Her social schedule belies that contention.
The wife attributes the breakdown to a number of factors. She claims that she always felt neglected and was never consulted as to her opinion. Further, the husband's work habits undermined her concept of family life. There were far too many moves, too many changes of plans, about which she was never consulted. As for the children, she stated that his lack of involvement with the children's activities put additional pressure on the marital relationship. CT Page 5871
She also testified at length concerning her husband's untruthfulness. She gave three examples. The first was his telling her and others that he has a Bachelor's Degree in Engineering. Further, he lost his job with Continental Can Co., Inc. because of embezzlement and finally, he was a tax evader, a liar and a fraud.
As a result of the lies and loss of job, she claims they suffered financially and in August, 1989 she moved out of the marital bedroom and in January 1991 she moved out of the marital home.
The husband will be fifty-six (56) years of age in a few weeks and is in apparent good health, his only complaint being that he suffers from high blood pressure.
He claims the breakdown occurred in January 1991 when his wife told him she wanted a divorce. He testified that, contrary to the wife's statement, there were many good times during the marriage. There were, however, many problems as well. He could never satisfy her, she was constantly complaining and she had a lover. She always criticized him in front of friends and their children. No one nor anything was spared from her criticism.
The court is convinced that the wife's behavior, from her constant criticism to her affair with Mr. Zapp, was in fact, the major contributor to the breakdown.
The court cannot conceive of any justification for her telling friends and the children that her husband was a fraud and an embezzler.
The record is well documented with the many instances of the wife's constant demeaning of the husband.
From the evidence presented, the court could further reasonably find that the husband did not defraud the Internal Revenue Service. The court, however, does not accept his version of his termination of employment with Continental Can Company, Inc. The court further finds that the wife withdrew $14,000 from the Key Bank Savings Account and that the husband withdrew $3,250 which should be considered by the court in its order of distribution of property.
The husband's present base salary is $120,000. In addition, he has received bonuses and a very attractive benefit package which includes life insurance, vacation, automobile and expenses, etc. An expert witness testified CT Page 5872 that the benefit package was worth $19,950. Although the expert also testified that the husband's equity in his business was worth $100,000, he feels that $60,000 is a more realistic figure.
Having carefully received all of the testimony and taking under consideration all of the factors mandated by Connecticut General Statutes, Secs. 46b-81 and 46b-82, the court orders as follows:
1. The marriage has broken down irretrievably, there is no prospect for any reconciliation, and a decree of dissolution is entered.
2. The defendant shall pay to the wife as periodic alimony the sum of $3,000.00 per month payable on the first day of June, 1991, in advance, and on the first day of each month thereafter. Said alimony shall terminate upon the happening of the first of the following events:
a. death of either party;
b. remarriage by the plaintiff;
c. June 1, 2001.
In no event shall alimony be modifiable as to term.
3. The wife is awarded, by way of a Qualified Domestic Relations Order, one-half of the husband's Continental Can Company, Inc. pension plan.
4. All of the IRA accounts shall be divided equally in accordance with the roll over regulations of the Internal Revenue Code.
5. The husband shall transfer to the wife all of his right, title and interest in the Oxford, Ohio condominium. The wife shall execute and deliver to the husband a mortgage deed and note (without interest) in the amount of $20,000 which amount shall be payable to him upon the happening of the first of the following events:
a. death of the wife;
b. sale of the condominium;
c. June 1, 1993.
6. The husband shall retain whatever rents he has CT Page 5873 accumulated on the Ohio property. He shall, however, pay whatever amount is due their son for his contribution to said property.
7. The proceeds from the sale of the marital home shall be divided 60 percent to the wife and 40 percent to the husband. The wife shall pay to the husband from her share the sum of $10,000.00 in full compensation for the moneys she appropriated from the home equity loan.
8. The court is aware that the husband, by court order, removed $3,250.00 from the escrowed proceeds and the wife, by court order, was permitted to remove $3,000.00 from said proceeds. Accordingly, the husband shall pay to the wife the sum of $250.00.
9. The Harman Limited Associated Partnership shall be divided equally between the parties.
10. The husband shall transfer to the wife all of his right, title and interest in the 1988 Oldsmobile.
11. For so long as husband is obligated to pay periodic alimony, he shall name his wife as beneficiary of his Northwestern Mutual Life Insurance policy.
12. Each of the parties shall retain ownership of the personal property presently in their possession except as follows:
a. Husband shall receive the following items:
 One-half of family photo albums (1964 to present);
 One-half of family movies (1964 to present);
 All Miller and Curtin Family Heirlooms: Antique gold locket/watch; Small antique maroon vase; Hummels: (1) Girl with basket; (2) Girl standing with arm raised; Brass Williamsburg William and Mary Trivet;
One of two antique trunks;
 One-half of twelve place settings — sterling silver;
CT Page 5874
 One-half of twelve place settings of Syracuse china;
One Boehm porcelain bird;
Two matching Wildwood lamps (hand painted);
Compact disc player;
New ATT answering machine;
Am/FM receiver/tuner;
One Paul Landry "Seaside Cottage";
 Two Bev Doolittle prints entitled "Forest Has Eyes."
13. Except as otherwise provided in this order, each of the parties shall be entitled to keep all property presently in his or her name and each shall pay his or her own liabilities and hold harmless and indemnify the other from any and all claims.
14. The husband shall pay to the wife, as an allowance to prosecute, within 60 days, the sum of $3,000.00. All other costs and fees shall be the responsibility of the party incurring the same.
Mihalakos, J.